On the Merits.
At the outset of the discussion, we are confronted with the statutory-provisions requiring that the contract be awarded to the lowest bidder. To the council is given the right to advertise for bids to construct pavements. The bidder offering Sicilian rock asphalt- was, in view of the guaranty offered, considered the lowest bidder for work advertised by the Council. The testimony shows that the material in question is of a-superior quality. The difficulty grows out. of the fact that it is obtained from one of the few mines mentioned in the specifications (that is by special mention in the specifications), and in that way, plaintiff urges., competition was stifled.
It is true that rock asphalt is obtained in large quantities in many places. It is also true that it varies in its composition, and that much of it is of inferior quality. Eor this reason, defendants contend in support of the specifications, which plaintiff asserts are offending and injurious, that a standard must be adopted in order to protect the city against worthless materials. '
We are not inclined to deny the truth of the proposition. In view, however, of the provisions of the. charter requiring competition in matters of bids, we are disposed to think that the specifications in question should be expanded a little and liberalized somewhat.
While the lowest bidder should not be afforded the opportunity of using untried and worthless materials, on the other hand, the standard or grade of materials required should be broad enough to embrace, if *2092 not absolutely all, at least a goodly portion, of the first class material ■offered for sale.
Rock asphalt is not res incognita. It has been known from time immemorial, and surely a standard of quality can be adopted without limiting bids to three or four mines.
We are informed by the evidence that the foreign product of the rock asphalt mines referred to, was selected chiefly for the reason, that domestic rock asiihalt has not given satisfaction as a pavement. None the less, we do not find in the record sufficient reason for excluding all mines save those mentioned in the specifications. There are many other mines than those before mentioned, which produce a pure and durable quality of rock asphalt. Even domestic rock asphalt, allthough it has not yet found its way freely into the markets, is entitled to a hearing.
The specifications set forth that "all rock asphalt used in this pavement, must be natural, bituminous, limestone rock mined from one or more of the natural deposits.” (italics ours). This positively excludes all rock asphalt, and particularly the domestic, save that before named. It is true that the testimony shows that domestic rock asphalt has never proven a success, unless it has been mixed with other kind of asphalt. To that extent at least it might perhaps be given some little consideration. But, under these specifications, the domestic rock asphalt would not have even the scant privilege of being mixed with foreign asphalt, and thereby of gaining some little success.
Those'who deal in and control sheet asphalt, are permitted to bid on ■sample and testimonial of sucessful use in any other city for a number ■of years. The restriction for the bid is not great, and we believe that •as to the two years limit, it is entirely reasonable. We understand, that, being an artificial product, there was no necessity to limit it as to locality, or to certain designated mines as in the case of rock asphalt. Would it not be reasonable to conclude that if sheet asphalt is not limited at all as to locality, the rock asphalt limits as to locality should be made as large as possible, and not restricted to a very few mines which may be under such control as to hold the material, rock asphalt, at •a higher price than it would be held at, if brought into regular competition ? One being the competitor of the other, the price of one has its influence over the price of the other.
In expressing these views, we are not to be construed as holding that *2093 any bidder can insist upon the acceptance of his bid without regard to the quality of the material he is to use. He should, above all other-considerations, satisfy the authorities that the material ho proposes to-use is of the quality required. Great care should be taken not to burden, the streets with bad pavements.
' This brings us to a consideration of plaintiff’s objection to certificates-to be obtained from those in charge of pavement constructed in other cities. In view of the great care and diligence required in the selection of good materials, we are not disposed to find fault with the methods-adopted to obtain certificates of good service for two years from some responsible person in authority. We are informed by the testimony that actual use in the streets for at least two years, is the only reliable method of ascertaining whether the paving material is good or bad.
Defendants, as a further’guaranty from bidders, prior to bidding, inserted another requirement in the specifications, i. e., a requirement regarding the surface of the pavement. This part of the specification calls-for evidence of successful use of the pavement proposed by the bidder for five years. We have not found that this last requirement is directly sustained by evidence of the necessity of a test of so many years. From our point of view, after the quality of the asphalt, be it rock or sheet,, is ascertained by a laboratory test and satisfactory use of the material for two years, an additional period of three years is a very long time. If there is necessity for additional time to investigate, it might be made,, we think, less than three years additional.
In Bergoffer vs. City, 23 N. Y. Law Journal, 206 to which learned counsel for the defendants have directed our attention, the two years’’ certificate was sustained as legal, and at the same time as ample.
We have expressed our views regarding the specifications. We think that they should be broader and more comprehensive. The lowest bid, that of Kelly, as his .bid did not comply with any of the specifications as required, was not accepted for good reason. After it was rejected, as an independent question, it would havg been better if the proposal for bids had been re-advertised.
Now that the questions have been passed upon, the specifications should be broadened. We think that the proposals for bids should be re-advertised, and that the' Spinks bid should be set aside. That is the-extent of our conclusions, although we have decided views, as indicated by our opinion, on the other subjects discussed. They are not intended, and we do not think that they tend, to invalidate or in any way *2094 .affect a contract for paving that has been accepted, and that is now being executed. We deem it proper to state that no unfairness is •charged in the pleadings. If any error has been committed, it grew out •of the desire, as we take it, of protecting the interests of the city. In •order to avoid error or mistakes, it requires unusual knowledge of such matters. They are full of difficulties. MacAdam, the engineer, and “the Scottish trustee of roads”, although he succeeded in acquiring fame, did not establish a system or plan always satisfactory in constructing roadways. Many difficulties arise and are to he con-sidered — the drainage of the soil, the grading, the quality pf the material to be used, the skilled workmanship required, the climate, •the traffic, and other considerations must be taken into account. Small wonder it is then, that those in charge find it necessary to insert many requirements in specifications, and for that'reason, we think that the -courts should be slow in setting aside an accepted contract that is being -satisfactorily executed, although it is different before acceptance.
Eor the reasons here assigned, the judgment of the District Court is .■affirmed in so far as it sets aside the bid of II. C. Spinks and annuls all nets looking to the signing of a contract to carry out the terms of his .bid.
Rehearing refused.